IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| In the Matter of Complaint of: DRONES MARINE LLC as Owner of "Flying Colours," a 54-foot 1992 Little Harbor recreational sloop, for Exoneration or Limitation of Liability | CIVIL ACTION IN ADMIRALTY<br><br>No. 1:07-1424-WDQ |

**RESPONSE OF PETITIONER DRONES MARINE LLC IN OPPOSITION TO "CLAIMANTS' MOTION TO TRANSFER CASE TO THE DISTRICT OF RHODE ISLAND"**

Petitioner Drones Marine LLC respectfully submits this Response in opposition to the Claimants' Motion to transfer this petition for exoneration or limitation of liability to the District of Rhode Island. As set forth below, Claimants have not carried their burden of proving that the balance of convenience and the interests of justice weigh strongly in favor of transfer, and therefore the Motion should be denied.

SUMMARY OF THE CASE

The "Flying Colours," a 54-foot Little Harbor recreational sloop built in 1992, was lost at sea on May 7, 2007 while en route from St. Thomas in the U.S. Virgin Islands to Annapolis, Maryland. Flying Colours was Hull No. 27 of a Ted Hood design that is recognized in the industry as being strongly built and seaworthy.

The vessel owner, Drones Marine LLC, is a limited liability company that was incorporated under the laws of Rhode Island but has since maintained its principal place of business and its business records at 1300 Connecticut Avenue NW, Washington, D.C. Given the location of that place of business, the formal "hailing port" designated on the vessel's federal documentation is

Washington, D.C. However, Flying Colours was never actually present in Washington, and instead followed a repeating pattern whereby the vessel spent the winter months in the Caribbean and the spring and fall in Maryland waters, mooring at Petrini's Shipyard in Annapolis. Because the Little Harbor line is a division of the Hinckley Company, maintenance and repairs were performed on Flying Colours at Hinckley's facility in Oxford, Maryland, most notably the replacement of the engine in the Fall of 2004 and repairs in June 2006 while the vessel was in Cape May, New Jersey. During the summers, the vessel called at various locations along the East Coast including New York; Portsmouth, R.I.; Nantucket; and Maine, and therefore an annual visit for routine maintenance was arranged with the Hinckley yard in Portsmouth in late spring or early summer.

Captain Patrick "Trey" Topping was a licensed captain who became skipper of the Flying Colours in March 2006. He was well-known in the sailing community for his meticulous approach to ensuring that his boat and equipment were maintained in top condition, and for being an experienced sailor who exercised caution and good judgment whenever he was on the water. Captain Topping's family have refrained from asserting any claim in respect of his death.

The vessel departed St. Thomas on April 30, 2007, and headed for Annapolis. On board were Captain Topping and three crew members: Jason Franks, a licensed captain and experienced offshore skipper in his own right; Christine Grinavic; and Rhiannon Borisoff. Along with at least three other boats, the Flying Colours was caught up in an intense storm, subsequently denominated "Andrea," about 120 miles off the coast of North Carolina, and Flying Colours' distress signal was received by the Coast Guard early on the morning of May 7. The crews on the other three boats were rescued, but despite a massive air and sea rescue effort, the Flying Colours and its crew were lost.

The petition for exoneration and limitation of liability was filed on May 30, 2007. In accordance with the deadline assigned by the Court for the filing of claims, Claimants filed their claims and their answers to the petition on July 26, 2007, and filed the present Motion to Transfer on July 31, 2007. No discovery has been conducted thus far.

ARGUMENT

As an initial matter, the limitation petition was properly filed in this Court pursuant to Rule F(9) of the Supplemental Rules for Admiralty or Maritime Claims, as the Flying Colours had not been attached or arrested in any district, no suit had been filed against the vessel owner, and the vessel, having been lost, was not itself located within any district. The petitioner chose the District of Maryland as the appropriate venue because the Flying Colours spent a substantial part of each year in Maryland waters and at Petrini's Shipyard, was maintained and repaired at Hinckley's Maryland facility, and in fact was en route to Maryland at the time of the casualty. Furthermore, this District is convenient to the vessel's "hailing port" and the owner's place of business where financial records and documents pertaining to the Flying Colors are kept and where the company's principal, J. Robinson West, and his assistant and custodian of records, Kathy Dowd, maintain their offices. In sum, witnesses and documents pertaining to this vessel and its history are located in and near the District of Maryland and this forum is convenient for the petitioner.

Supplemental Rule F(9) permits the Court to transfer a limitation proceeding to any district "for the convenience of the parties and witnesses, in the interest of justice." The Court's determination of a motion for transfer of a limitation proceeding is guided by the same considerations that apply to transfer motions governed by 28 U.S.C. §1404(a). For example, in the Eastern District of Virginia case cited by Claimants, in which the district court ruled that the District

of Maryland was the appropriate forum for a limitation proceeding, the aspects of the particular case to be considered include (1) the convenience of the parties; (2) the convenience of material witnesses; (3) the availability of process to compel the presence of witnesses; (4) the cost of obtaining the presence of witnesses; (5) the relative ease of access to sources of proof; (6) calendar congestion; (7) where the events in issue took place; and (8) the interests of justice in general. *Complaint of Norfolk Dredging Co.*, 240 F. Supp. 2d 532 (E.D. Va. 2002). Other factors to be considered include the original choice of forum, the relative familiarity of the courts with the applicable law, the enforceability of the judgment, judicial economy, and the public interest in the local adjudication of local controversies. *Id.* These factors can be summarized in essentially four categories: (1) the weight accorded the plaintiff's choice of forum; (2) witness convenience and access; (3) convenience of the parties; and (4) the interest of justice. *See Cross v. Fleet Reserve Association Pension Plan*, 383 F. Supp. 2d 852, 856 (D. Md. 2005).

The party who seeks a transfer of venue on the grounds of convenience has the burden of establishing that the particular circumstances *strongly* favor a change of the venue chosen by the party filing the action. *Collins v. Straight, Inc.*, 748 F.2d 916, 921 (4th Cir. 1984). So long as the filing party has a rational basis for choosing to file an action in the District of Maryland, that choice of forum is entitled to "substantial weight," *Cross v. Fleet Reserve Association Pension Plan,* 383 F. Supp. 2d at 856, and *Penn-Plax, Inc. v. L. Schultz, Inc.*, 988 F. Supp. 906, 912 (D. Md. 1997), and "[u]nless the balance is strongly tipped in favor of transfer, the plaintiff's choice of forum should not be disturbed." *Whiting-Turner Contracting Co. v. US AIR, Inc.*, 1992 U.S. Dist. LEXIS 4609 (D. Md. April 3, 1992); *see also Equitable Bank v. Finn*, 671 F. Supp. 374, 380 (D. Md. 1987) ("The

plaintiff's choice of forum is favored, and the defendant carries a heavy burden of proof to shift the forum.").

Given the burden of proof placed on parties who seek a change of venue, it has been held that the claimants in a limitation proceeding cannot obtain a transfer simply because an alternate forum is arguably more convenient for them and their witnesses. For example, in *Humble Oil & Refining Co. v. Bell Marine Services, Inc.*, 321 F.2d 53 (5th Cir. 1963), the Fifth Circuit upheld the denial of a motion to transfer a limitation action from Texas to Louisiana even though a related case was proceeding in Louisiana, and the parties' respective witnesses were divided between the two states. Likewise, in *Complaint of American President Lines, Ltd.*, 890 F. Supp. 308 (S.D.N.Y. 1995), the Southern District of New York declined to transfer a limitation action stemming from a collision in Korean waters, even though both vessels were surveyed, and their cargo was discharged and surveyed, in Korea. The Court invoked the rule that "the party seeking transfer is required to specify what evidence and witnesses it intends to rely on and show that the balance of convenience weighs heavily in its favor," and because both sides would have similar burdens of litigation and obtaining evidence, the action remained in New York. 890 F. Supp. at 318-19. In *Complaint of Connecticut National Bank*, 687 F. Supp. 111 (S.D.N.Y. 1988), an explosion and fire on a vessel sailing from Hawaii to Korea prompted the filing of a limitation petition in New York. In denying a motion to transfer the action to Hawaii, the district court noted that claimants seeking transfer "must make a clear and convincing showing that the balance of convenience weighs heavily in favor of the transferee court," and "where the balance is in equipoise, plaintiff's choice will not be disturbed." 687 F. Supp. at 113.

In order to carry their burden of proving that parties and witnesses will incur substantially greater inconvenience and expense if this limitation petition remains in the District of Maryland, the Claimants are "required to submit affidavits from the witnesses and/or parties involved that contain information detailing to the court why or to what extent he or she will be inconvenienced by allowing the case to remain in the district where it was brought. Counsel's assertions of hardship, without affidavits from the parties and/or witnesses who are purportedly going to be inconvenienced, is insufficient to convince the court that venue should be changed." *Helsel v. Tishman Realty & Constr. Co.*, 198 F. Supp. 2d 710, 712 (D. Md. 2002) (internal citations and quotations omitted).

Also, given the nature of petitions seeking exoneration or limitation of liability for maritime casualties, it has been held that the location of witnesses and evidence relating to the determination of damages will not, in the first instance, override the preference of the chosen forum for purposes of determining the vessel owner's right to exoneration and limitation. *See Petition of Baker-Whiteley Towing Co.*, 145 F. Supp. 904 (D. Md. 1956) (declining to transfer limitation action where parties and witnesses were not located in any one jurisdiction and case could be heard more quickly in Maryland).

Even if the necessary proof by affidavits is provided, a transfer is unwarranted simply because affidavits are offered that state a number of potential witnesses, who might prefer to have the case transferred, reside in another jurisdiction. In *Development Co. of America v. Insurance Co. of North America*, 249 F. Supp. 117, 118 (D. Md. 1966), the district court reviewed numerous cases on this issue and summarized their holdings:

> Usually the courts have demanded a positive showing that another forum would be more convenient and have refused to transfer on the basis of conclusory affidavits which merely allege that trial where suit

> was brought would cause great expense, hardship, and the importation of many witnesses, some of whom might be beyond the reach of the courts' process. The courts have refused to let applications for transfer become a "battle of numbers" with the victor emerging as the party who is able to present the longest list of witnesses located in the desired district of transfer.

Claimants offer such a list of witnesses, but little else. Claimants fail to provide complete addresses for many witnesses, fail to identify which of these witnesses are family members related to the decedents, fail to identify which witnesses possess material information or what that information is, and fail to indicate whether or not these witnesses will consent to appear. Indeed, Claimants tacitly admit the weakness of their argument, as they are compelled to concede that "the material witnesses . . . are scattered around the United States and at least 3 other countries." (Claimants' Memorandum of Law at p. 3).

Claimants urge the Court that a heightened preference should still be given to Rhode Island because five "key" individuals allegedly reside there. Ted Hood and Ted Fontaine are listed because they were the original designers of the 54-foot Little Harbor sloop, of which Flying Colours was Hull No. 27. Barrett Carr is listed solely because he is allegedly employed by the "successor in interest" to the original design company. Claimants give no indication as to the factual testimony they expect to elicit from any of these three as to a design process that occurred prior to 1992, much less provide an affidavit or statement showing some "key" connection between their testimony and the loss of the Flying Colours in an intense tropical storm in May 2007.

The fourth witness offered by Claimants is one Walter Cavanaugh, who allegedly maintains a residence somewhere in Newport, Rhode Island. Claimants indicate Mr. Cavanaugh was a boyfriend of a crewmember, and assert that because he sailed on the Flying Colours a year before

PBH: 191756.1

the casualty, he must necessarily be aware of maintenance and repairs performed on the vessel that year and is familiar with its condition as of that time. Again, Claimants offer no affidavit or statement, provide no details of his knowledge nor of his expected testimony, and say nothing about whether or not Mr. Cavanaugh has refused to appear and testify. Given the Claimants' emphasis on a relationship between Mr. Cavanaugh and one of the crewmembers, one might reasonably infer that Mr. Cavanaugh would readily provide testimony in connection with this case, assuming he can contribute testimony that the Court will find to be material and helpful. In any event, in the absence of an indication as to the extent of Mr. Cavanaugh's knowledge or memory, or the relevance of his observations to the loss in May 2007, his status as a witness cannot be ascertained, much less evaluated.

Finally, Claimants list one Tim Dargan, described as a "captain" who allegedly lives somewhere within the state of Rhode Island. Claimants assert "on information and belief" that he might have been the last person to see the Flying Colours in St. Thomas before its departure, and represent their belief that Mr. Dargan was "familiar with the layout and equipment of the vessel and its condition." No affidavit or statement reveals Mr. Dargan's actual whereabouts or hints at the testimony that might be offered by him, and therefore one can only speculate on whether he will even be a witness in this case.

Putting aside the unsupported assertions by Claimants that these five individuals reside in Rhode Island and are "key" witnesses, Claimants offer the erroneous legal conclusion that the location of non-party witnesses is "determinative" of a motion for transfer, citing *Complaint of Norfolk Dredging Co.*, 240 F. Supp. 2d 532 (E.D. Va. 2002). To the contrary, the case law demonstrates that all of the pertinent factors must be considered, and the *Norfolk Dredging* court was

simply emphasizing one particular aspect in that case, namely the fact that *all* of the non-party witnesses were located in Maryland and not in Virginia. Furthermore, the Virginia court's transfer of Norfolk Dredging's limitation petition to Maryland was also premised on the fact that the collision had taken place in Maryland waters, and the fact that related litigation was already underway in Maryland. Here, by contrast, the loss occurred on the high seas and Claimants themselves cite sixteen different jurisdictions where witnesses and documents may be found.

CONCLUSION

Given the Claimants' admission that the parties, witnesses, and evidence are "scattered" among multiple jurisdictions, and given the failure of the Claimants to identify specific, relevant testimony by even one witness that could not be obtained and presented in this Court, Petitioner respectfully submits that the Claimants' Motion should be denied.

Respectfully submitted,

PALMER BIEZUP & HENDERSON LLP

By: /s/ Stephen M. Calder

Stephen M. Calder
Bar No. 05660
620 Chestnut Street, Suite 956
Philadelphia, PA 19106-3409
Ph. (215) 625 9900
Fax (215) 625 0185
Email: scalder@pbh.com

Attorneys for Petitioner

Dated: August 17, 2007

**CERTIFICATE OF SERVICE**

The undersigned counsel for Petitioner Drones Marine LLC hereby certifies that the foregoing Response to Claimants' Motion to Transfer Case has been electronically filed with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all counsel of record.

By: /s/ Stephen M. Calder
Stephen M. Calder
Bar No. 05660

Dated: August 17, 2007